**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YOR**K

---

EDILBERTO RUIZ, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

        Plaintiff,

        v.

GREEN 70 LLC
      d/b/a GREEN KITCHEN,
GREEN 84, LLC
      d/b/a GREEN KITCHEN,
C & V 77 ENTERPRISES, LLC
      d/b/a GREEN KITCHEN,
ARI KASIMIS,
PETER KASIMIS, *and* VASILI
KARABATSOS,

        Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

      Plaintiff EDILBERTO RUIZ ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against GREEN 70 LLC, d/b/a GREEN KITCHEN, GREEN 84, LLC d/b/a GREEN KITCHEN, C & V 77 ENTERPRISES, LLC d/b/a GREEN KITCHEN ("Corporate Defendants"), ARI KASIMIS, PETER KASIMIS, and VASILI KARABATSOS ("Individual Defendants"), (each individually, "Defendant" or, collectively, "Defendants"), and states as follows:

1

## INTRODUCTION

1.       Plaintiff alleges, pursuant to the Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premiums, due to an illegal fixed salary scheme; (2) liquidated damages; and (3) attorney's fees and costs.

2.       Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages, due to an illegal fixed salary scheme; (2) unpaid overtime premiums, due to an illegal fixed salary scheme; (3) unpaid spread of hours premium; (4) statutory penalties; (5) liquidated damages; and (6) attorney's fees and costs.

3.       Plaintiff further alleges, on an individual basis, pursuant to the Earned Safe and Sick Time Act ("ESSTA"), that he was deprived of his statutory rights when Defendants denied him his rightful pay for earned safe and sick time that he took off.

4.       Plaintiff additionally alleges for damages under the Internal Revenue Code, 26 U.S.C. § 7434 for relief, damages, fees, and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

5.       Plaintiff further alleges, on behalf of himself and others similarly situated, that Defendants breached contracts Defendants made with them by failing to pay employer payroll taxes for them, as required by the Federal Insurance Contribution Act ("FICA").

6.       Plaintiff also alleges that, in retaining the above employer payroll tax sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

9.      Plaintiff EDILBERTO RUIZ is a resident of Queens County, New York.

10.     Corporate Defendant GREEN 70 LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 1325 2nd Avenue, New York, NY 10021 and an address for service of process located at 1203 River Road, Apartment 9B, Edgewater, NJ, 07020.

11.     Corporate Defendant GREEN 84, LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 1619 2nd Avenue, New York, NY 10028 and an address for service of process located at 1203 River Road, Apartment 9B, Edgewater, NJ, 07020.

12.     Corporate Defendant C & V 77 ENTERPRISES, LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and address for service of process located at 1475 1st Avenue, New York, NY, 10075.

13.     Individual Defendant ARI KASIMIS is an owner and executive officer of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant ARI KASIMIS exercises—and also delegates to managers and supervisors—the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members.

Individual Defendant ARI KASIMIS has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant ARI KASIMIS additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant ARI KASIMIS ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

14.    Individual Defendant PETER KASIMIS is an owner and executive officer of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant PETER KASIMIS exercises—and also delegates to managers and supervisors—the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant PETER KASIMIS has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant PETER KASIMIS additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant PETER KASIMIS ensures that managers implement Defendants'

employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

15.    Individual Defendant VASILI KARABATSOS is an owner and executive officer of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant VASILI KARABATSOS exercises—and also delegates to managers and supervisors— the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant VASILI KARABATSOS has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant VASILI KARABATSOS additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant VASILI KARABATSOS ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

16.    Throughout the relevant period, Defendants owned and operated a group of restaurants, all called "Green Kitchen," in the following locations and through the associated corporations:

    i.    Green 70 LLC - 1325 2nd Avenue, New York, NY 10021;

    ii.    Green 84, LLC - 1619 2nd Avenue, New York, NY 10028; and

      iii.  C & V 77 ENTERPRISES, LLC - 1475 1st Avenue, New York, NY, 10075 (now closed).

(Collectively, the "Restaurants")

17.     The Restaurants are operated as a single integrated enterprise under the common control of Defendants. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose, demonstrated by:

      i.  The Restaurants are under the control of the Corporate Defendants and the Individual Defendants. Individual Defendants ARI KASIMIS, PETER KASIMIS, and VASILI KARABATSOS own and operate all of the Restaurants.

      ii.  Individual Defendants are identified as principals on some of the Restaurants' liquor licenses. *See* **Exhibit A**, the Restaurants' liquor licenses.

      iii.  The Restaurants are in the same business of providing food services, hosting private events, and providing catering services. All locations are advertised on Defendants' website and can be reached through the contact page on that website. The Restaurants share a common career page on their website, through which any potential employee can apply to any of the locations. The Restaurants utilize an online contactless ordering system through their common website. The Restaurants have the same menu and serve the same food at each location which can be accessed through Defendants' central website. *See* **Exhibit B**, Defendants' website (https://greenkitchennyc.com/); **Exhibit C**, Defendants' ordering system.

    iv.   The Restaurants are advertised on the same social media account. *See* **Exhibit D**, the Restaurants' Instagram Page.

    v.   The Restaurants share supplies and employees between each location on an as-needed basis.

    vi.   The Restaurants share common payroll and management policies as well as a centralized system of labor relations for employees.

18.    At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

19.    At all relevant times, each Defendant was an "employer" and "person" within the meaning of Section 15(a) of the FLSA, Section 215 of the NYLL, and Section 20-912 of the ESSTA.

20.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.    Plaintiff brings claims for relief as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including but not limited to sous chefs, cooks, food prep workers, servers, food runners, and busboys, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

22.    At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper

7

wages, including overtime wages, due to an illegal fixed salary. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

23.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including but not limited to sous chefs, cooks, food prep workers, servers, food runners, and busboys, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class" or the "Class Members").

25.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts upon which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

27.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices Defendants, as alleged herein, of (1) failing to pay minimum wages, (2) failing to pay overtime premiums, (3) failing to pay spread-of-hours premiums, (4) failing to provide proper wage statements, and (5) failing to provide proper wage and hour notices. Defendants' policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

28.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

29.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing

the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30.    Defendants and other employers throughout the United States violate state labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31.    These are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

   a.   Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL and ESSTA;

   b.   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class Members properly;

c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class Members for their work;

d.  Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

e.  Whether Defendants compensated Plaintiff and Class Members on an illegal fixed salary basis;

f.  Whether Defendants paid Plaintiff and Class Members the proper minimum wage pursuant to the NYLL;

g.  Whether Defendants paid Plaintiff and Class Members their proper overtime rates of one-and-a-half times their regular rate for hours worked over forty in a given week;

h.  Whether Defendants paid Plaintiff and Class Members spread- of-hours premiums for days worked longer than ten hours;

i.  Whether Defendants accurately tracked Plaintiff's number of hours earned for sick leave under the ESSTA;

j.  Whether Defendants properly compensated Plaintiff for his earned sick leave;

k.  Whether Defendants paid Plaintiff and Class Members their proper wages for all hours worked;

l.  Whether Defendants provided proper wage statements as required under the New York Labor Law; and

m.  Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the NYLL.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

32.     Plaintiff was hired by Defendants in 1999 to work as Food Preparer at Defendants' Green Kitchen located at 1475 1st Avenue, New York, NY, 10075. Plaintiff worked at the 1st Avenue location until it closed in January 2022 whereupon he moved to work the same position at Defendants' Green Kitchen at 1619 2nd Avenue, New York, NY 10028.

33.     Plaintiff was fired in January 2025 because Defendants wanted to replace him with a member of the owners' family.

34.     From the start of his employment, until January 2022, Plaintiff was scheduled to work six (6) days a week, Wednesday through Monday, from 6:00 a.m. until 9:00 p.m. each day, for a total of ninety (90) hours per week. From January 2022 until his employment with Defendants ended, Plaintiff was scheduled to work three (3) days per week, Monday through Tuesday, from 8:00 a.m. until 4:00 p.m., for a total of twenty-four (24) hours per week. FLSA Collective Plaintiffs and Class Members were scheduled to work similar hours.

35.     At all times, Plaintiff was paid a fixed salary of $175.00 per day for each day he worked, regardless of the number of hours he worked. FLSA Collective Plaintiffs and Class Members were similarly paid at a fixed per-diem rate.

*Plaintiff's Fixed Salary Claims*

36.     At all times during his employment, Plaintiff was paid a fixed amount of $175.00 for every day worked. That fixed amount did not change based on the number of hours Plaintiff worked in a day or how many hours he had worked during the week, giving rise to a number of violations of Plaintiff's rights.

37.     Because Plaintiff was always paid the same amount per day, regardless of the number of hours that he worked, he was often paid below the prevailing New York State minimum

wage. Since Plaintiff was always paid $175.00 per day regardless of how many hours he worked, for longer days, Plaintiff was essentially being paid less per hour, as his compensation did not increase to mirror the increased amount of work that he was performing for Defendants.

38.     During the periods that Plaintiff was working on his first schedule of fifteen-hour days, Plaintiff was effectively only being paid $11.67 per hour. In 2019, the earliest date in the relevant period, the New York minimum wage was $15.00 per hour, and it only increased from there on out. Plaintiff was therefore being underpaid by *at least* $3.33 for every hour that he worked under his original schedule. At times when Plaintiff worked more than his scheduled fifteen hours, the underpayment was even greater.

39.     The invariable nature of Plaintiff's per-diem pay also resulted in Plaintiff not being paid his proper overtime premiums of one-and-a-half times his regular rate for all hours worked greater than forty in a given week.

40.     During the time when Plaintiff was working ninety (90) hours per week, more than half of Plaintiff's hours should have been paid at the overtime rate. For minimum wage in 2019, that amount should have been $22.50 for every hour over forty in each week worked. However, due to Plaintiff's fixed pay, he was underpaid by $10.83 for every overtime hour he worked.

41.     Finally, Defendant's fixed rate scheme also failed to proper compensate Plaintiff his spread-of-hours premiums.

42.     New York State law requires that whenever a non-exempt employee's workday spans more than ten (10) hours, that employee must be paid the equivalent of one hour at the applicable minimum wage. For the relevant period between January 2019 and July 2022, Plaintiff worked fifteen (15) hours every day—far more than the ten hours required to be eligible for spread-of-hours premiums.

43.    Despite Plaintiff working more than a ten-hour spread every single day he worked between January 2019 and July 2022, Plaintiff was never paid his owed spread-of-hours premiums. Defendants clearly knew that Plaintiff should have been paid such premiums, as they were responsible for the scheduling of his hours which they must have known exceeded ten hours in span.

44.    FLSA Collective Plaintiffs and Class Members were similarly subject to the same aforementioned violations stemming from an illegal fixed per diem compensation scheme. Defendants scheduled FLSA Collective Plaintiffs and Class Members to work similar hours and paid them at similar rates.

45.    Defendants' knowingness and willfulness as it pertains to the above violations is particularly notable and egregious as they actually settled a case during the relevant period in this matter that contained the **exact same** allegations as those brought herein.

46.    In 2018, four former employees brought claims against C & V ENTERPRISES LLC, VASILI KARABATSOS, and Constantine Kasimis (a now deceased relation of Individual Defendants ARI KASIMIS and PETER KASIMIS in the instant matter) alleging, among other claims, "Plaintiff's worked for Defendants in excess of 40 hours per week, without appropriate minimum wages, overtime, and spread of hour's compensation…" *See Fuentes Tapia et al v. C & V 77 Enterprises, LLC et al*, No. 1:18-cv-04210, at Dkt. No. 1 (S.D.N.Y. May 10, 2018). They also alleged that each of the four plaintiffs was paid in cash at a straight rate, a policy which was in part responsible for the violations those plaintiffs suffered. *Id.* The case settled on July 15, 2019.

47.    Therefore, Defendants had clear notice of both the existence and illegality of their wage and hour policies to which Plaintiff, FLSA Collective Plaintfffs, and Class Members were

subjected, yet they still chose to continue those selfsame policies in order to benefit themselves at the expense of Plaintiff, FLSA Collective Plaintiffs, and Class Members.

*Plaintiff's WTPA Claims*

48.    At all relevant times, Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive any wage statements from Defendants.

49.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

50.    Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with any wage statements.

51.    In failing to provide any wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

52.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doings, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

53.    Had Defendants provided any wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked and their proper pay rates, as required by law, Defendants would have had to either (a) increase employees' wages to correspond to the hours they actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employees actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

54.    The failure to provide any wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

55.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct

effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, at *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

56.    The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, at *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

57.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y., LLC*, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

58.    Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with any wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants were supposed to submit to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

59.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the

plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id.* "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id.*

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

60.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id.* Plaintiff and Class Members lost benefits by virtue of how Defendants failed to report their income, and how Defendants failed to report employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

61.     Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

62.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these

claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

*Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993)

63.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants failed to report their actual wages to the IRS. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as Defendants failed to send her W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

64.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

*Plaintiff's Individual ESSTA Claims*

65.     During Plaintiff's employment, Defendants engaged in adverse action against Plaintiff when they refused to pay him for earned time legally taken off for safe and sick time.

66.     Defendants had a general policy of not paying for any sick leave that employees took off. Over the course of his employment, Plaintiff sometimes had to take time off due to health reasons, most notably when he suffered a severe injury to his foot outside of work that required more than one appointment in order to be properly addressed. When Plaintiff needed to take a day off, either for his foot injury or when he became ill in the more normal course of things, Defendants refused to pay for his sick time, even though it had been properly accrued under the ESSTA.

67.     Defendants furthermore conditioned his continued employment upon the receipt of doctors' notes explaining why Plaintiff was unable to work. Employers cannot condition sick pay or continued employment on the receipt of doctors' notes unless an employee is absent for more than three consecutive days.

68.     Defendants did not offer any of their employees any paid time off ("PTO"). While the ESSTA does allow Employers to require that Employees use PTO for their ESSTA eligible sick time if they wish to get paid, and to deny them pay for sick leave taken after all of the employee's PTO has been used, it also provides that if no PTO is offered, or if the PTO offered does not cover an equal or greater amount of time than is required by the ESSTA, then the employer must allow their employees access to *paid* time off as described by the law.  Therefore, were required to pay for Plaintiff's sick leave despite their lack of offered PTO.

69.     Defendants knowingly and willfully violated Plaintiff's rights by refusing to pay for sick leave and conditioning Plaintiff's employment on the provision of doctor's notes explaining his condition(s).

70.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

71.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

72.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

73.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

74.     At all relevant times, Defendants had a policy and practice of failing to pay overtime compensation at the statutory rate of one and one-half times the regular rate of pay to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

75.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs the proper overtime premium of one and one-half times the regular rate of pay for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

76.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

77.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

78.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation and unpaid wages, plus an equal amount as liquidated damages.

79.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

80.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

81.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

82.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

83.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them the proper minimum wages for all hours worked.

84.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their proper overtime compensation at rates of not less than one and one-half times their regular rates of pay for each hour worked in excess of forty (40) hours in a workweek.

85.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them any spread of hours premiums for all their shifts worked in excess of ten (10) hours.

86.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay for all hours worked.

87.     Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiff and Class Members, as required by the NYLL § 195(1).

88.     Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class Members with every wage payment, as required by the NYLL § 195(3).

89.     Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, unpaid overtime compensation, unpaid minimum wages, unpaid spread of hour premiums, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## VIOLATION OF THE EARNED SAFE AND SICK TIME ACT

90.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

91.     Defendants knowingly and willfully failed to pay Plaintiff for proper sick leave as required under the ESSTA.

92.     At all relevant times, Defendants employ five or more employees and are employers covered by the ESSTA's sick leave provision as an "'employer' as defined in subdivision (3) of section 190 of the labor law." ESSTA § 20-912.

93.     Defendants are required to give paid sick time to their employees, upon request. The ESSTA provides that:

> All employers that employ five or more employees, all employers of one or more domestic workers, and any employer of four or fewer employees that had a net income of one million dollars or more during the previous tax year, shall provide paid safe/sick time to their employees in accordance with the provisions of this chapter. An employer shall pay an employee for paid safe/sick time at the employee's regular rate of pay at the time the paid safe/sick time is taken, provided that the rate of pay shall not be less than the highest applicable rate of pay to which the employee would be entitled pursuant to subdivision 1 of section 652 of the labor

24

law, or any other applicable federal, state, or local law, rule, contract, or agreement. Such rate of pay shall be calculated without allowing for any tip credit or tip allowance set forth in any federal, state, or local law, rule, contract, or agreement.

ESSTA § 20-913(a).

94.     Due to Defendant's NYLL and ESSTA violations, Plaintiff is entitled to all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## COUNT IV

## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS

## UNDER 26 U.S.C. § 7434(a)

95.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

96.     Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

97.     By failing to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

98.     Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

99.     Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

## COUNT V

## BREACH OF CONTRACT

100.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

101.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he  duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153.

102.    When Plaintiff and Class Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

103.    Defendants breached this duty when they decided to pay Plaintiff and Class Members in cash and not file proper W-2. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

## COUNT VI

## UNJUST ENRICHMENT

104.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

105.    To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516 (2012) (internal quotations omitted).

106.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

107.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by

law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.      An award of unpaid wages, including minimum wages, due under the NYLL;

d.      An award of unpaid overtime compensation due under the FLSA and the NYLL;

e.      An award of unpaid spread of hours premiums due under the NYLL;

f.      Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

g.      Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

h.      An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

i.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the FLSA;

j.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

k.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to provide sick leave pay pursuant to the ESSTA;

l.      An award of compensatory damages and punitive damages due under the ESSTA

m.      An award of five thousand dollars in statutory damages to Plaintiff and each Class member under 26 U.S.C. § 7434;

n.      An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' fees, expert fees, and statutory penalties;

o.    Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

p.    Designation of this action as a class action pursuant to F.R.C.P. 23;

q.    Designation of Plaintiff as Representative of the Class; and

r.    Such other and further relief as this Court deems just and proper.

## **<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Date: July 14, 2025                                          Respectfully submitted,

                                                    By:    */s/ C.K. Lee*_____
                                                           C.K. Lee, Esq.
                                                           **LEE LITIGATION GROUP, PLLC**
                                                           C.K. Lee (CL 4086)
                                                           Anne Seelig (AS 3976)
                                                           148 West 24th Street, Eighth Floor
                                                           New York, New York 10011
                                                           Tel.: (212) 465-1188
                                                           Fax: (212) 465-1181
                                                           *Attorneys for Plaintiff,*
                                                           *FLSA Collective Plaintiffs,*
                                                           *and the Class*